1
2
3
4

UNITED STATES DISTRICT COURT

5

DISTRICT OF NEVADA

6

DANYL W. BARBOUR,

Case No. 3:15-cv-00380-HDM-WGC

7

Plaintiff,

**REPORT & RECOMMENDATION OF
U.S. MAGISTRATE JUDGE**

8

v.

9

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

10

11

Defendant.

12

This Report and Recommendation is made to the Honorable Howard D. McKibben,

13

Senior United States District Judge. The action was referred to the undersigned Magistrate Judge

14

pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

15

Before the court is Plaintiff's Motion for Remand/Reversal. (Electronic Case Filing

16

(ECF) No. 11.) The Commissioner filed a Cross-Motion to Affirm and Opposition to Plaintiff's

17

Motion to Remand. (ECF Nos. 16, 19.)[1] Plaintiff filed a reply and response to the

18

Commissioner's cross-motion. (ECF No. 19.)

19

After a thorough review, the court recommends that Plaintiff's motion be granted; that

20

the Commissioner's cross-motion be denied; and that the matter be remanded for further

21

proceedings consistent with this Report and Recommendation.

22

## I. BACKGROUND

23

On June 21 and 30, 2012, Plaintiff filed applications for Disability Insurance Benefits

24

(DIB) under Title II of the Social Security Act and for Supplemental Security Income (SSI)

25

under Title XVI of the Social Security Act. (Administrative Record (AR) 221-231.)

26
27
28

---

[1] These documents are identical.

1  The applications were denied initially and on reconsideration. (AR 138-146, 157-162.) Plaintiff

2  requested review before an Administrative Law Judge (ALJ). (AR 163.)

3      On September 16, 2014, Plaintiff appeared, represented by counsel, and testified on his

4  own behalf before ALJ Janice Shave. (AR 39-79.) Testimony was also taken from a vocational

5  expert (VE). (AR 69-75.) On December 12, 2014, the ALJ issued a decision finding Plaintiff not

6  disabled. (AR 19-32.) Plaintiff requested review, and the Appeals Council denied the request,

7  making the ALJ's decision the final decision of the Commissioner. (AR 1-6, 12-14.) Plaintiff

8  then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).

9      Plaintiff argues that the ALJ erred in determining Plaintiff can perform past relevant

10  work as an electronics technician and the alternate occupation of electronics inspector in light of

11  his assessed residual functional capacity.

12  **II. STANDARD OF REVIEW**

13  **A. Substantial Evidence**

14      The court must affirm the ALJ's determination if it is based on proper legal standards and

15  the findings are supported by substantial evidence in the record. *Gutierrez v. Comm'r Soc. Sec.*

16  *Admin.*, 740 F.3d 519, 522 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)). "Substantial evidence is

17  'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

18  reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez*, 740 F.3d at 523-

19  24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

20      To determine whether substantial evidence exists, the court must look at the record as a

21  whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*,

22  740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may

23  not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*,

24  759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035

25  (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in

26  medical testimony, and for resolving ambiguities.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d

27  1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or

28  reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner."

1    *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

2    That being said, "a decision supported by substantial evidence will still be set aside if the ALJ

3    did not apply proper legal standards." *Id.* (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d

4    1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In

5    addition, the court will "review only the reasons provided by the ALJ in the disability

6    determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*,

7    759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

8    **B. Five-Step Evaluation Process of Disability**

9           Under the Social Security Act, "disability" is the inability to engage "in any substantial

10   gainful activity by reason of any medically determinable physical or mental impairment which

11   can be expected to result in death or which has lasted or can be expected to last for a continuous

12   period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant "shall be determined

13   to be under a disability only if his physical or mental impairment or impairments are of such

14   severity that he is not only unable to do his previous work but cannot, considering his age,

15   education, and work experience, engage in any other kind of substantial gainful work which

16   exists in the national economy, regardless of whether such work exists in the immediate area in

17   which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if

18   he applied for work." 42 U.S.C. §  1382c(a)(3)(b).

19          The Commissioner has established a five-step sequential process for determining whether

20   a person is disabled. 20 C.F.R. § 404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S.

21   137, 140-41 (1987).In the first step, the Commissioner determines whether the claimant is

22   engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is

23   denied. 20 C.F.R. §  404.1520(a)(4)(i), (b); §  416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the

24   claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

25          The second step requires the Commissioner to determine whether the claimant's

26   impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and

27   § 416.920(a)(4)(ii); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits

28   the claimant's physical or mental ability to do basic work activities. *Id.*

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the impairment meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (c). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 404.1525(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last fifteen years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(b)(1).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 1545 and § 416.945. In determining RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of limitation, and medical reports, to determine what capacity the claimant has for work despite the impairments. 20 C.F.R. § 404.1545(a) and § 416.945(a)(3).

A claimant can return to previous work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted).

If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131 ("Generally, a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment.").

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform work available in the national economy. 20 C.F.R. § 404.1520(e) and § 416.290(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez*, 740 F.3d at 528. If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

"The grids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and citation omitted). The Grids place jobs into categories by their physical-exertional requirements, and there are three separate tables, one for each category: sedentary work, light work, and medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative notice of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels. *Id*. Each grid has various combinations of factors relevant to a claimant's ability to find work, including the claimant's age, education and work experience. *Id*. For each combination of factors, the Grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in that category. *Id*.

If at step five the Commissioner establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely,

1   if the Commissioner determines the claimant unable to adjust to any other work, the claimant

2   will be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071;

3   *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

### III. DISCUSSION

**A. ALJ's Findings in this Case**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 27, 2012. (AR 22.)

At step two, the ALJ found Plaintiff had the following severe impairments: coronary artery disease, and status post stent placement. (AR 22.)

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listed Impairments. (AR 26.)

At step four, the ALJ determined Plaintiff has the RFC to lift and carry twenty pounds occasionally and ten pounds frequently; to stand and walk four hours in an eight-hour workday, and sit for six hours in an eight-hour workday, with normal breaks; he can never climb ladders, ropes or scaffolds; he can occasionally stoop, kneel, crouch, crawl and climb ramps and stairs; he can frequently balance; he must avoid extreme heat and cold, as well as concentrated exposure to unprotected heights and hazardous of moving machinery; and he would likely be absent from work on a random basis of up to four hours per day every four months due to intrusive pain. (AR 27.) The ALJ stated that this RFC was consistent with a capacity between the exertional requirements for sedentary work and light work, explaining that Plaintiff can perform lifting and carrying at the light exertional level, but is not able to engage in the six hours per day of standing and walking required of most light occupations. (AR 27.) As a result, the ALJ found his RFC was closer to the sedentary level of exertion. (AR 27.)

The ALJ noted that a claimant must be able to return to past relevant work as the claimant actually performed the work, or as it is generally performed throughout the national economy. She pointed to the VE's testimony concerning Plaintiff's past relevant work experience as follows: (1) Electrical Engineer, Dictionary of Occupational Titles (DOT)

003.061-010, generally performed at a light level and SVP 8, but was actually performed as heavy exertional work; (2) Calibrator, DOT 710.381-034, generally performed as light and SVP 6, but was actually performed as heavy exertional work; (3) Electronics Technician, DOT 828.261-022, generally performed as medium and SVP 7 work, but was actually performed as light exertional work; and (4) Engineering Technician, DOT 007.161-026, generally performed as light and SVP 7 work, but was actually performed as heavy exertional work. (AR 30-31.)

Next, the ALJ accepted the VE's testimony that an individual with Plaintiff's vocational profile and RFC could perform his past work as an electronics technician as actually performed by the claimant. (AR 31.)

The ALJ then made an alternative finding at step five that there were other jobs in existence in the national economy that Plaintiff could also perform. (AR 31.) The ALJ considered Plaintiff's age (53 years old on the alleged disability onset date (considered an "individual closely approaching advanced age), and subsequently changed category to "advanced age"), his education, work experience and RFC to make this determination. (AR 31.)

The ALJ found Plaintiff had acquired work skills from past relevant work (20 CFR 404.1568 and 416.968) because the VE testified that all of his four prior jobs required the following skills: the ability to repair electronic equipment, ascertain problems causing equipment to malfunction, test equipment, and perform quality control efforts on equipment. (AR 31.)

The ALJ accepted the VE's testimony that these skills from Plaintiff's past relevant work were transferable to the job of electronics inspector, DOT 726.381-010, SVP 6, light exertional level, and there were 48,800 of those jobs nationally. (AR 31-32.)

The ALJ stated that the VE's testimony was largely consistent with the information contained within the DOT, and otherwise, the VE relied on his twenty-three years of job placement experience and his experience in placing individuals in electronics and electrical jobs in providing his testimony. (AR 32.) The ALJ concluded by stating that while Plaintiff's additional limitations did not allow him to perform the full range of sedentary work, considering his age, education and transferable work skills, a finding of not disabled was appropriate. (AR 32.)

- 7 -

**B. Hearing Testimony and the ALJ's Findings**

Plaintiff testified that he last worked for a company called PMT in around 2010, doing engineering work. (AR 47-49.) He described this job as having three functions or components: (1) testing power modules on radio communication devices; (2) documentation control, which involved using a word processor to write; and (3) taking inventory utilizing a spreadsheet application. (AR 50-53.) The testing portion of the job was done while sitting at a desk or standing at a bench. (AR 51.) The documentation control function was done while sitting at a computer desk. (AR 51-52.) Inventory was also done on a computer. (AR 52.) At this job, he had to lift a maximum of twenty pounds. (AR 53.)

Prior to this, he worked as a "lab tech" or "technician engineer" where he would "repair and troubleshoot electronic devices." (AR 52.) He would go from bench to bench in this job, where he would both stand and sit on a high stool. (AR 52-53.) At this job he lifted up to eighty pounds. (AR 53.)

The VE testified concerning Plaintiff's work history:

The Claimant was employed as an electrical engineer, <u>DOT</u> number 003.061-010, SVP: 8, but a light exertional level, he performed it at heavy. He was also a calibrator, 710.381-034, SVP: 6, light exertion level. He performed that at heavy. The Claimant was also employed as an electronics technician, 828.261-022, SVP: 7, medium exertion level, performed it at light. And he was an engineering technician, 007.161-026, SVP: 7, light exertion level, he performed it as heavy.

(AR 70.)

The ALJ then posed the following question to the VE:

Q     Now I want to ask you first, you gave us all jobs at heavy, heavy, light and heavy. The Claimant described one job that he did where he was seated much of the day, or a sit/stand option lifting up to 20 pounds. That was what he called PMT. Was that the job you described as an electronics tech, technician?
...
A     Yes, it was, Your Honor.
Q     Okay. And the job is listed as light, as I understand it, because of the lifting of items of 20 pounds even though it was actually a job done largely seated, is that correct?
A     Well, Your Honor, the record simply indicates that he lifted a heavy weight for the jobs that I've indicated.
Q     Okay. So a heavy weight, but you rated the job as light, so light would not be the same thing as a heavy weight. Light would be a light weight at 20 pounds? I'm a little confused by your use of the word heavy.

- 8 -

A.    Well, Your Honor, I'm not understanding what you're asking me.

Q.    Okay. I'm asking you, this individual lifted lifted 20 pounds by his testimony for the PMT job, but he said he was seated or standing at will, which might suggest a sedentary job. So I'm curious to know, is this the same job that we're talking about, the PMT job, where he said he was seated at a computer most of the day or could be at a bench working, or at a table working, is that the PMT job?

A.    Well, he lifted 20 pounds, that, that made it a light, light lifting situation.

Q.    Okay. So even though the sitting and standing were not consistent with light, it's considered light because of the lifting, is that correct?

A.    Yes, Judge.

(AR 71-72.)

The ALJ then posed a hypothetical to the VE:

Q.    All right. Thank you. So hypothetical one is a hypothetical individual of the Claimant's same age, educational and vocational background. This individual is capable of lifting up to 20 pounds occasionally, lifting and carrying up to 10 pounds frequently; a slight limitation on the frequently because the individual is able to stand and walk for about four hours a day, and can sit for up to six hours a day with normal breaks. The individual is -- can never climb ladders, ropes or scaffolds; climbing of stairs and ramps is occasional. Balancing is frequent; stooping, kneeling, crouching and crawling are all occasional.

Individual must avoid concentrated exposure to heat, extreme heat and extreme cold, and must avoid concentrated exposure to unprotected heights and hazardous or moving machinery. Those are all the limitations on this individual. Would this hypothetical individual in hypothetical number one be able to perform any of the Claimant's past work?

A.    Your Honor, that person could work as an electronics technician as the Claimant performed the job.

(AR 72.)

The ALJ then posed the following line of questioning concerning transferable skills:

Q.    Now would there be other work that such an individual could perform that would utilize transferable skills from the Claimant's past work with SVP: 6, 7, and 8 that would not require significant vocational readjustment but would fit this hypothetical individual?

A.    Yes, Your Honor. That hypothetical person could work as an electronics inspector, <u>DOT</u> number 726.381-010, SVP: 6, light exertion level. There are 48,800 in the national economy.

...

Q.    Please tell me what job or jobs the transferable are -- pardon me, come from, and what those skills are.

...

A.    Well, this, this is a person who has skills in terms of repairing electronic equipment, for example. Works with equipment operators to ascertain problems that are causing a breakdown; is able to test equipment. Is able to

perform a quality control kind of function to make sure that the equipment is operating correctly.

Q.      And is that from the various jobs the individual has performed; electrical engineer, calibrator, electronics tech and engineering tech?

A.      Yes, Judge.

Q.      From all four of those jobs?

A.      All four of those jobs have something to do with those functions, yes, Judge.

(AR 72-73.)

The ALJ then posed a second hypothetical, assuming the same characteristics as the first, but this individual would be absent up to four hours every four months for intrusive pain. (AR 73.) The VE testified this would not affect the jobs identified. (AR 74.)

Plaintiff's counsel then questioned the VE concerning the electrical inspector position:

Q.      Dr. Komar, just a general question. The position of the electrical inspector, is that from your experience, it's SVP: 6 and it's classified as light exertional level, is that a job that can ever be done at a sedentary level, from your experience?

A.      At the sedentary level, typically no, because the person needs to be on his feet to be able to work with equipment. Equipment could be large units, it could be small. So to be able to just sit and do your job, typically the electronics inspector would not be able to perform it on that basis.

(AR 74.)

The ALJ then asked the VE some additional questions:

Q.      Dr. Komar, the hypothetical I asked you, hypothetical one, had an individual who was able to stand and walk for about four hours and sit for up to six hours in a day, and that it seems is not the traditional number of hours an individual would stand and walk or sit in a light job. Were you able to answer that hypothetical one and two based on information contained wholly within the Dictionary of Occupational Titles, or did you need to go outside the bounds of that to provide your answer because the times listed were somewhat different than the traditional light?

A.      I, I went out of bounds for that, to use your phrase, Your Honor.

Q.      What is the basis, then, of your opinion?

A.      It's just based on my experience in placing people with disabilities in these types of occupations.

Q.      And your experience is reflected in your curriculum vitae or your resume that's in the record, is that what you're referring to?

A.      Well, my, well, my vitae does not say anything about engineering or electronics occupations to indicate that --

...

Q.      Okay. Your curriculum vitae does not say anything about electronics, but does it talk about your personal experience?

A.      Yes. It says that I've been doing this for 23 years.

(AR 75.)

Plaintiff's counsel then asked the VE several questions:

Q.      Yes. Just a follow up to the question your resume says nothing about engineering or electrical placement, that's correct about the positions we're talking to today -- about today?
A.      What was your question again, counsel?
Q.      That you just, in your testimony just now you said that your resume says nothing about engineering or electrical technician placement, correct?
A.      Right. It does not specify any specific occupation. It just is not that specific in its presentation.

(AR 76.)

The ALJ then asked: "Dr. Komar, have you worked placing people in the electronics field either as an electronics technician, engineering technician, a calibrator or an electrical engineer?" (AR 76.) The VE responded that he had worked placing people in electronics and electrical. (AR 76.) He testified that experience was over the course of his twenty-three year career. (AR 76.)

In her decision, the ALJ accepted the VE's opinion that a person with Plaintiff's RFC could perform his past relevant work as an electronics technician as actually performed by Plaintiff. (AR 31.)

The ALJ made an alternative finding that Plaintiff acquired work skills from his past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy. (AR 31.) The ALJ relied on the VE's testimony that an individual with Plaintiff's age, education, past relevant work experience and RFC could perform the job of electronics inspector, which is light, and had 48,800 jobs nationally. (AR 32.)

Finally, the ALJ commented that the VE's testimony was largely consistent with the information contained in the DOT, and otherwise the VE relied on his twenty-three years of job placement experience and his experience placing individuals in electronics and electrical jobs in providing his testimony. (AR 32.) Ultimately, the ALJ found Plaintiff not disabled under Medical-Vocational Rule 201.15 and Rule 201.07. (AR 32.)

///

///

**C. Past Relevant Work as an Electronics Technician**

If a Social Security claimant can still do past relevant work, he or she is not disabled.
20 C.F.R. § § 404.1520(f) and 416.920(f).To determine whether Plaintiff can return to his past relevant work the ALJ must ascertain the demands of the former work and compare it to the present capacity. 20 CFR 404.1520(e), 416.920(e); *Pinto v. Massanarii,* 249 F.3d 840, 844-45 (9th Cir. 2001). The claimant must be able to perform:

> 1. The actual functional demands and job duties of a particular past relevant job; or
> 2. The functional demands and job duties of the occupation generally required by employers throughout the national economy.

*Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (quoting SSR 82-61).

Plaintiff's testimony concerning the electronics technician job at PMT was that one component of his job involved testing power modules, which was done while sitting at a desk or standing at a bench. He did not testify how much time he would sit or stand in a given day. The second and third components of the job involved sitting at a computer. Again, he did not specify how much of his day was devoted to each component of the job, so as to enable one to discern how much time he was sitting or standing in a given day.

The VE testified that the person in hypothetical one could work as an electronics technician as Plaintiff performed the job. The hypothetical individual was limited to stand/walking for four hours a day and sitting for six hours a day. It is not clear from the record that a person with the limitations in the hypothetical, which reflect Plaintiff's RFC, could perform the electronics technician job as Plaintiff actually performed it because it is not clear how often he was standing or sitting. Therefore, as an initial matter, the ALJ erred because she did not adequately ascertain the demands of the former work so as to compare them to his capacity at the time she adjudicated his claim.

In addition, the court must address the apparent conflict between Plaintiff's RFC, which the ALJ found to be closer to sedentary, and the assigned light exertional level of the past relevant work the VE testified he could perform.

In *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995), the Ninth Circuit held that the "'ALJ may rely on the testimony of the vocational expert even if it is inconsistent with the job

1    descriptions set forth in the [DOT].'" *Johnson v. Shalala*, 6- F.3d 1428, 1435 (9th Cir. 1995)

2    (quoting *Conn v. Secretary of Health and Human Services*, 51 F.3d 607, 610 (6th Cir. 1995)).

3    The ALJ may do so, "only insofar as the record contains persuasive evidence to support the

4    deviation." *Id.*

5        In 2000, the Social Security Administration issued Social Security Ruling 00-4P. 2000

6    WL 1898704 (Dec. 4, 2000). It took the additional step of requiring ALJs to identify and obtain a

7    reasonable explanation for any conflict between evidence provided by a VE and information in

8    the DOT. *Id.*

9        The Ninth Circuit confronted this issue in *Massachi v. Astrue*, 486 F.3d 1149 (9th Cir.

10   2007) "In making disability determinations, the Social Security Administration relies primarily

11   on the *Dictionary of Occupational Titles* for 'information about the requirements of work in the

12   national economy.'" *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (quoting SSR 00-

13   4P at * 2). It "also uses testimony from vocational experts to obtain occupational evidence." *Id.*

14   When there is a conflict between the two, the Ninth Circuit confirmed that "the ALJ must then

15   determine whether the vocational expert's explanation for the conflict is reasonable and whether

16   a basis exists for relying on the expert rather than the *Dictionary of Occupational Titles.*" *Id.*; *see*

17   *also Zavalin v. Colvin*, 778 F.3d 842 (9th Cir. 2015) ("When there is an apparent conflict

18   between the vocational expert's testimony and the DOT−for example, expert testimony that a

19   claimant can perform an occupation involving DOT requirements that appear more than the

20   claimant can handle−the ALJ is required to reconcile the inconsistency."). "The ALJ's failure to

21   resolve an apparent inconsistency may leave [the courts] with a cap in the record that precludes

22   [the courts] from determining whether the ALJ's decision is supported by substantial evidence."

23   *Zavalin*, 778 F.3d at 846 (citing *Massachi*, 486 F.3d at 1154).

24       Light work is defined in the regulations as, *inter alia,* "requir[ing] a good deal of walking

25   or standing, or ... sitting most of the time with some pushing and pulling of arm or leg controls."

26   20 C.F.R. 404.1567(b); 20 C.F.R. 416.967(b). "To be considered capable of performing a full

27   range of light work, [the claimant] must have the ability to do substantially all of these

28   activities." *Id.*. Social Security Ruling (SSR) 83-10 expands on this definition by stating that "the

full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10, 1983 WL 31251 (Jan. 1, 1983).

Therefore, there is an apparent conflict between the VE's testimony that Plaintiff could perform the job at the light exertional level when the ALJ limited Plaintiff to walking and standing for up to four hours in an eight-hour day.

The ALJ asked the VE about the fact that the individual in the first hypothetical was limited to standing and walking four hours in an eight-hour day, and sitting six hours in an eight-hour day, when a light job requires an individual to stand and walk more than this. Thus, the ALJ appears to have recognized the apparent conflict between Plaintiff's RFC, which the ALJ classified as closer to sedentary, and the finding that Plaintiff could perform the electronics technician job at the light level. The question, then, is whether the ALJ solicited and relied on a reasonable explanation for the conflict.  SSR 00-4P provides examples of reasonable explanations for conflicts:

> Evidence from [VEs] can include information not listed in the DOT. The DOT contains information about most, but not all, occupations. The DOT's occupational definitions are the result of comprehensive studies of how similar jobs are performed in different workplaces. The term "occupation," as used in the DOT, refers to the collective description of those jobs. Each occupation represents numerous jobs. Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a [VE's] experience in job placement or career counseling.
> The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A [VE] or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT.

SSR 00-4p, at * 2-3.

In *Tommasetti v. Astrue*, 533 F.3d 1035 (9th Cir. 2008), the court held that the ALJ erred when she "deferred to the VE's personal knowledge and experience as superseding the DOT" when the VE's testimony was "brief and indefinite." *Id*. at 1042. In *Tommasetti*, the ALJ found the claimant could return to past work which was classified by the DOT as light work, even though the claimant had been assigned an RFC that limited him to sedentary work with a further

- 14 -

1   restriction that he could lift no more than ten pounds. *Id*. The ALJ concluded that the claimant

2   could not perform the work as he actually performed it because it would require him to lift more

3   than ten pounds, but the ALJ relied on the VE's assessment that "regardless of the differences in

4   demands in the position as performed in the national economy, it would not ordinarily require

5   that the individual perform activities requiring a greater residual functional capacity than that of

6   Tommasetti." *Id*. In addition to finding that the VE's statement was "brief and indefinite," the

7   Ninth Circuit held that the ALJ erred in not "identify[ing] what aspect of the VE's experience

8   warranted deviation from the DOT, and [in failing to] point to any evidence in the record other

9   than the VE's sparse testimony for the deviation." *Id*.

10       Here, the ALJ relied solely on the VE's brief statement that he was based his testimony

11   on his experience placing people in jobs in the electrical field as an explanation for the conflict

12   between Plaintiff's limitations and the past relevant work classification at the light exertional

13   level. The ALJ's broad statement concerning the VE's vague experience in placing people in

14   electrical jobs does nothing to clarify how Plaintiff is able to perform the electrical inspector job

15   at the light level. Moreover, the VE's testimony on this issue is even more brief than the VE's

16   testimony in *Tommasetti*. The VE did not explain, consistent with SSR 00-4P, *how* his

17   experience in job placement in the electrical field led him to conclude that a claimant limited to

18   four hours on his feet could perform a job classified at the light exertional level. For instance, the

19   VE did not state that in his experience many light jobs in this field would accommodate

20   Plaintiff's limitations, or some other explanation as to how Plaintiff could perform this work

21   with his limitations.

22       The Commissioner relies on *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005), for

23   the proposition that a VE's expertise provides the foundation for his testimony; however,

24   *Tommasetti*¸ decided after *Bayliss*, appears to require that when the ALJ identifies a conflict

25   between the VE's testimony and the DOT, the ALJ should at least identify what aspect of the

26   VE's experience warranted deviation from the DOT. *Tommasetti*, 533 F.3d at 1042. The general

27   statement that the VE has placed people in jobs in the field does nothing to explain how a person

28   with an RFC close to sedentary, with a limitation to standing/walking up to four hours in a day

can perform a job performed at the light level, which requires standing/walking six hours in an eight-hour day.

Therefore, the court finds the ALJ erred in concluding Plaintiff could perform past relevant work as an electronics technician.

**D. Electronics Inspector**

The VE's testimony was clear that the electronics inspector position could not be performed at the sedentary level. The VE offered no reasonable explanation as to how Plaintiff, whom the ALJ specifically found had an RCF closer to the sedentary level, particularly as it related to the sit/stand/walk limitations, could then perform the electronics inspector job. The ALJ's reliance on the VE's statement that he was relying on his prior experience directly contradicted the VE's testimony that the job could not be performed at the sedentary level. The ALJ elicited no explanation for the conflict between the two statements. Therefore, under *Tommasetti*, the ALJ erred.

**C. Conclusion**

In sum, the court recommends that the matter be remanded for additional testimony from Plaintiff concerning how he performed the electronics technician position, and from the VE as to Plaintiff's ability to perform past relevant work and/or Plaintiff's ability to perform the electronics inspector position identified at step five.

///
///
///
///
///
///
///
///
///
///

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's motion (ECF No. 11) be **GRANTED**; that the Commissioner's cross-motion to affirm (ECF No. 18) be **DENIED**; and that the matter be **REMANDED** to the ALJ for further proceedings consistent with this Report and Recommendation.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment.

DATED: July 29, 2016.

_____

WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE